

# Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| DEANNA DECKARD, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD33227 |
| | ) | |
| WEBSTER COUNTY, MISSOURI, | ) | **Filed: March 9, 2015** |
| | ) | |
| Defendant-Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF DALLAS COUNTY

Honorable James A. Hackett, Special Judge

### AFFIRMED

This case comes before us following a jury verdict against Webster County, Missouri ("Appellant"), after a reserve deputy from Webster County struck and injured plaintiff Deanna Deckard. Appellant brings five points on appeal; four of the points challenge evidentiary rulings by the trial court and one challenges the verdict director. We find no error and affirm the judgment.

### EVIDENTIARY RULINGS

The trial court's decision whether to admit an expert's testimony will not be disturbed on appeal absent an abuse of discretion. *Swartz v. Gale Webb Transp. Co.*, 215

S.W.3d 127, 129-130 (Mo. banc 2007). "A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *McGuire v. Seltsam*, 138 S.W.3d 718, 720 (Mo. banc 2004). "A determination of prejudice by the erroneous admission of evidence depends largely upon the facts and circumstances of the particular case." *Id.* at 722. Likewise, we give substantial deference on other evidentiary rulings. *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 367 (Mo. banc 1993).

## Point I

In its first point, Appellant complains that its retained expert witness, Michelle Beach, should not have been allowed to testify on behalf of Deckard because "she was not named as an expert witness during the discovery process." Appellant claims Deckard's failure to list Beach in an interrogatory request violated Rule 56.01(b)(4)(a),[1] and, as such, is an abuse of discretion. The facts in this case warrant a finding that there was no abuse of discretion in allowing the testimony. The trial was set to occur on December 2, 2013. Beach was hired by Appellant two years prior to trial, in October 2011; but she was not named as a retained expert until November 14, 2013, by Appellant, and was deposed by Deckard on November 26, 2013. On that same date (6 days prior to trial), Appellant admitted to the trial court it was informed that counsel for Deckard announced his intention to call Beach as a witness for Deckard. Appellant also admitted that the expert was named in a witness list on that same date, identifying Beach, and stating that she would be called in Deckard's case in chief. Appellant was even told the date and time that Beach would be called. From that record, the trial court could have

---

[1] All rule references are to Missouri Court Rules (2015), unless otherwise specified.

2

reached the conclusion that after the expert witness was named by Appellant (two weeks prior to trial) and during the deposition something was said that Deckard's attorney decided may have assisted Deckard. It also may have caused Appellant to have had second thoughts about the expert. The claim of Appellant that it was prejudiced because it "removed the ability of [Appellant] to decide whether to call her as a witness at all" is specious. Appellant knew or could have known what the witness would say two years prior to its notice to Deckard.

It is clear from the record that the parties were engaging in discovery right up to the time of trial; there was no prejudice to Appellant because of the notice by Deckard at the deposition and the subsequent written notice that Deckard intended to call Appellant's witness in her case. Appellant's attempt to claim a novel interpretation of Rule 56.01(b)(4)(a), which would absolutely prohibit a trial judge from admitting testimony from an expert (or any other witness) that was not properly disclosed by supplementing interrogatory answers, has no support in the rule itself or in case law and, thus, fails. Our review is whether the trial court abused its discretion in allowing this expert known to, retained by, and disclosed by Appellant, to testify. It does not shock our sense of justice and, thus, we find no merit to Appellant's claim. Point I is denied.

**Point II**

In its second point, Appellant contends the trial court erred in allowing evidence of Deputy Taylor's excessive speed because, as a law enforcement officer responding to an emergency dispatch, the deputy was permitted to drive in excess of the posted speed limit and therefore was not negligent in exceeding the speed limit. Appellant's argument

3

misses the mark; Appellant's argument goes to the weight of the evidence but not the admissibility of it.

A brief recitation of the relevant facts in the light most favorable to the judgment is necessary. Reserve Deputy Taylor of the Webster County Reserves was responding at 1:54 a.m., to a dispatch that two males were assaulting a female by the side of Interstate 44 ("I-44") at around the 103 mile marker. Deputy Taylor was approximately one mile from the I-44 100 mile marker and entered I-44 from there. The testimony included lay and expert testimony but generally all agreed that Deputy Taylor was exceeding the speed limit when he saw a flash of something on the right side of the road, braked, and hit Deckard, who was on foot, on the left side of the road. Deckard's Petition claimed Deputy Taylor was negligent in driving at an "excessive speed," "failing to keep a careful lookout," "failing to audibly warn plaintiff with his siren," "failing to use the highest degree of care," "failing to properly and timely react," "failing to yield," and "failing to maintain control of his vehicle."

Appellant argues in Point II that the evidence of Deputy Taylor speeding was not relevant and should not have been admitted; Appellant contends that it was not unreasonable for the deputy to be speeding and cites to cases which found no negligence when an emergency vehicle was speeding. Appellant primarily relies upon *Oberkramer v. City of Ellisville*, 650 S.W.2d 286 (Mo.App. E.D. 1983), for the proposition that an emergency vehicle traveling at an excessive speed cannot be negligence as a matter of law. Appellant is mistaken. In *Oberkramer*, the court adopted the Restatement of Torts. The Restatement of Torts states:

> Where an act is one which a reasonable man would recognize as involving
> a risk of harm to another, the risk is unreasonable and the act is negligent

4

if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done.

Restatment (Second) of Torts § 291 (1965).  Thus, the reasonableness of a defendant's actions is determined by "balancing the magnitude of the risk created by his conduct against the utility of his conduct."  ***Oberkramer***, 650 S.W.2d at 292.  The court found that "[a] heightened risk of injury is acceptable only so long as it does not become unreasonable[;]" for instance, "where the circumstances raise the magnitude of the risk beyond acceptable levels[.]"  ***Id.***  The court remanded the case for proper pleading and proof regarding the negligence of the emergency vehicle, which included the speed of the emergency vehicle and the conditions surrounding the incident.  ***Id.*** at 293-94.

In this case, there was evidence from several witnesses about the speed of Deputy Taylor.  Although Appellant cites the evidence favorable to its interpretation of no negligence on the part of the deputy, there was evidence contrary to Appellant's evidence that supported a claim that the speed was excessive given the facts of the case.  In other words, the reasonableness of the deputy's actions was determined by the jury after hearing all of the evidence, including the speed at which he was traveling, the distance he had to travel, that the victim was on foot, and the magnitude of potential harm to the victim.  As counsel for Appellant correctly stated to the judge during her objections concerning Deckard's evidence, the question of whether the deputy was negligent was the ultimate question for the jury.  As such, the jury needed to be advised of all the circumstances of the accident, including the speed of the vehicle involved.  Point II is denied.

**Point III**

Likewise, Appellant complains that whether the deputy used his siren was not instructive on whether the deputy was negligent. In a confusing argument, Appellant appears to be claiming that the use of the siren does not constitute the operation of a motor vehicle because the use of the siren "is not necessary in the movement of a motor vehicle" and, therefore, any evidence whether the siren was being operated does not fall within the parameters of section 537.600(1) (sovereign immunity statute) and amounted to an abuse of discretion and prejudice to Appellant. Appellant further cites to cases regarding the meaning of the operation of a motor vehicle and concludes that, because it is not necessary to have a siren on to operate a vehicle, evidence whether the siren was on is covered by sovereign immunity.

Section 537.600.1[2] is not concerned with the admission or exclusion of evidence. Subsection 537.600.1 concerns the waiver of common law sovereign immunity. Whether evidence concerning the use of the siren was admissible on the issue of negligence in an automobile accident does not hinge on the waiver of sovereign immunity. The question is whether the court abused its discretion in allowing the evidence on the issue of the negligence of Appellant. The use of the siren was one factor available to the jury in their

---

[2] Section 537.600.1 states, in relevant part:

> Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:
> (1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment[.]

6

determination of whether there was negligence.[3]  The trial court did not abuse its discretion in allowing evidence from both sides of whether the conduct of the deputy was negligent.  Point III is denied.

## Point V

Appellant brings two issues in its fifth point:[4]  the first is that the evidence regarding whether the deputy was using his siren should have been the subject of a withdrawal instruction.  Generally, a withdrawal instruction is proper to avoid misleading the jury with improper evidence or issues.  *Arnold v. Ingersoll-Rand Co.*, 908 S.W.2d 757, 764 (Mo.App. E.D. 1995).  Appellant bases its claim that a withdrawal instruction was warranted upon one answer that was given to a question asked by Deckard's counsel.  Appellant objected to the answer.  The trial court sustained the objection and told the jury to disregard the answer given regarding the use of the siren.  "Juries are presumed to know and follow the instructions of the court."  *Reynolds v. State*, 87 S.W.3d 381, 385 (Mo.App. S.D. 2002).  In this case, as noted in Point III, the court did not abuse its discretion in allowing testimony concerning the deputy's use or non-use of the siren on his car.  The evidence was relevant and admissible.  If a false issue had been created, the trial court was in a better position to know whether a withdrawal instruction was warranted.

---

[3] Appellant adds arguments contending that, "there is a question of proximate cause as well," and that Deckard "failed to state a claim."  Neither of these claims affects the admission of the evidence as stated in this point.  We do not address either claim but direct Appellant's attention to *Oberkramer*, which speaks directly to the claim of no "proximate cause" in a high speed chase.  *Oberkramer*, 650 S.W.2d at 298-299.

[4] Generally, structuring a point relied on so that it groups together contentions not related to a single issue violates Rule 84.04.  *See Rogers v. Hester ex rel. Mills*, 334 S.W.3d 527, 536 (Mo. App. S.D. 2010).  Here, Appellant argues that both the withdrawal instruction and the reading of the statute are remedies for the same wrong.  We address both, cautioning counsel that these are two different and distinct claims of trial court error and may have different standards of review and different arguments in favor of them.

The second prong of Appellant's fifth point is that, in addition to a withdrawal instruction, the court should have read a statute, section 304.022, RSMo Cum.Supp. 2006, to the jury. Section 304.022 is entitled "Emergency vehicle defined--use of lights and sirens--right-of-way--stationary vehicles, procedure--penalty." Appellant requested the trial court "to read portions of 304.022 that affect the use of a siren." Appellant does not inform this Court just what "portions" of section 304.022 trial counsel wanted read to the jury.[5] When the trial court asked, "In its entirety?", Counsel responded, "I think not, just because much of subsection two doesn't relate to this issue, but subsection one and then subsection three down here -- there's two sections that apply to this and there's much in the middle that does not." In arguing to the trial court, Appellant's counsel stated that Deckard's counsel had "implied" to the jury that "there may have been a violation of law here" (in the nonuse of the siren by Deputy Taylor). Counsel stated it was important for the jury to know that not using the siren was not a violation of Missouri law.

The trial court noted that an answer concerning the use of the siren had been volunteered by a witness, that the trial court sustained an objection to the answer, and told the jury to disregard the answer. Appellant points to nothing in the record to support its claim that an issue had been raised about whether Deputy Taylor had violated the law in not using the siren. Appellant cites to no case law supporting its proposition that it would be appropriate to read "portions" of a statute to the jury to cure an "implied error."

---

[5] For that reason alone, we would not be able to find trial court error.

Reading a statute to the jury might very well have created the false issue in the case.[6]

Again, the trial court was in a better position to judge whether any false issues had been created warranting a withdrawal instruction and certainly did not err in refusing to read "portions" of a statute to cure any claimed false implications. The trial court did not err in refusing either to give a withdrawal instruction or to allow a portion of a statute to be read to the jury. Point V is denied.

## EVIDENCE SUPPORTING VERDICT DIRECTOR

### Point IV

Appellant's fourth point claims:

THE TRIAL COURT ERRED IN SUBMITTING PLAINTIFF'S VERDICT DIRECTOR STATING THAT DEPUTY TAYLOR (1) "FAILED TO KEEP A CAREFUL LOOKOUT," (2) "DROVE AT AN EXCESSIVE SPEED," (3) "KNEW, OR BY THE USE OF HIGHEST DEGREE OF CARE COULD HAVE KNOWN THAT THERE WAS A REASONABLE LIKELIHOOD OF COLLISION IN TIME THEREAFTER TO HAVE STOPPED, OR SWERVED, OR SLACKENED SPEED" IN THAT THE EVIDENCE DID NOT SUPPORT THESE SUBMISSIONS AND SUCH INSTRUCTION FAILED TO FOLLOW THE APPLICABLE MISSOURI APPROVED INSTRUCTION.

It is not clear whether Appellant is claiming that there was an error in the form of the verdict director, or claiming that plaintiff failed to make a submissible case, or claiming that substantial evidence does not support the verdict director. There are different standards of review for each proposition. Because of its argument, we read Appellant's fourth point to be that substantial evidence does not support submission of the verdict director concerning the failure to keep a proper lookout. For negligence

---

[6] Generally, "reading a statute to the jury is improper, and if, in reading the statute, counsel misstates the law or misleads the jury, it is reversible error." *Lasky v. Union Elec. Co.*, 936 S.W.2d 797, 802 (Mo. banc 1997). "In Missouri, the jury is to obtain the law only from approved jury instructions." *Kline v. City of Kansas City*, 334 S.W.3d 632, 645 (Mo.App. W.D.2011) (internal quotations and citation omitted).

9

purposes, "[a] driver's obligation to maintain a careful lookout extends to a pedestrian regardless of whether he or she is standing on the shoulder or on the traveled part of the roadway." *Berra v. Danter*, 299 S.W.3d 690, 698 (Mo.App. E.D. 2009). "There is a duty for a driver to keep a careful lookout for approaching vehicles with sufficient care to appreciate and apprehend the danger of going on without taking precautionary measures." *Vintila v. Drassen*, 52 S.W.3d 28, 40-41 (Mo.App. S.D. 2001).

> Whether a jury was properly instructed is a question of law this Court reviews de novo. This Court reviews the record in the light most favorable to submission of the instruction. Any issue submitted to the jury in an instruction must be supported by substantial evidence from which the jury could reasonably find such issue. Substantial evidence is evidence which, if true, is probative of the issues and from which the jury can decide the case. If the instruction is not supported by substantial evidence, there is instructional error, which warrants reversal only if the error resulted in prejudice that materially affects the merits of the action.

*Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010) (internal quotations and citations omitted).

Further, our review begins with the proposition that the trial court's judgment is presumed valid and the burden is on the appellant to demonstrate its incorrectness. *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo.App. S.D. 2010).

> [A] distinct analytical framework emerges for each type of challenge to the evidentiary basis of a judgment.[] A not-supported-by-substantial-evidence challenge requires completion of three sequential steps:
> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,
> (3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

*Id.* at 186-87.

First, we note that Appellant fails to cite any favorable evidence in the record supporting the existence of the proposition. To support its claim, Appellant claims the testimony of its accident reconstructionists support its claim that the deputy was keeping a careful lookout. Appellant further states that all the evidence was in actuality an argument that Deputy Taylor was operating his vehicle at an excessive speed and the evidence of the speed of the vehicle was improper. We have already addressed Appellant's argument concerning the propriety of evidence concerning Deputy Taylor's speed. To the extent that Appellant is arguing that its experts were more believable than other testimony, that argument also fails. As noted, the jury could believe or disbelieve any witness, including the experts, in whole or part.

Deckard's claim that Deputy Taylor failed to keep a proper lookout included the evidence that Deputy Taylor was traveling, at approximately 2:00 a.m. in the morning, to a potential crime scene where the victim was on foot on the interstate just three miles from where Deputy Taylor entered the interstate. The jury had evidence before it to conclude that Deputy Taylor may have been traveling those three miles at approximately one hundred miles per hour and without his siren on when he struck the victim of a possible crime. The jury had evidence from witnesses to conclude that, in doing so, Deputy Taylor failed to keep a careful lookout. The evidence of Deputy Taylor's speeding, the lack of use of the siren, the time of morning, and the claim that it was a

pedestrian running from possible assailants may have all contributed to the deputy's failure to keep a careful lookout. Substantial evidence supports the verdict director.[7]

The trial court did not err in submitting the verdict director, Instruction No. 7. Point IV is denied.

The judgment is affirmed.

Nancy Steffen Rahmeyer, J. – Opinion Author

Mary W. Sheffield, P.J. - Concurs

Don E. Burrell, J. - Concurs

---

[7] Appellant's argument concerning the form of the verdict director appears to be that language was missing from MAI 17.04, but Appellant could not provide the instruction prior to submission of its brief because "we were unsuccessful requesting a copy . . . from the Dallas County Circuit Clerk." Further, Appellant states that the claimed objection to the submission was preserved; however, a review of the pages cited in Appellant's brief claiming that the issue was preserved do not show an objection to the verdict director other than the claim that the *Oberkramer* case stands for the proposition that speed of an emergency vehicle was not relevant. Counsel added there were no other objections that had not been talked about in an informal conference. We have no transcript nor is there any preservation of an objection in an "informal" conference. As such, we do not address any claimed errors in the form of the verdict director.