

# Missouri Court of Appeals
## Southern District
### Division One

JOHN DOE, a minor, by and through    )
his Natural Mother, MOTHER DOE,    )
   )
     Plaintiff-Appellant,    )
   )
vs.    )    No. SD35573
   )
OZARK CHRISTIAN COLLEGE,    )    Filed April 5, 2019
   )
     Defendant-Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Dean G. Dankelson

*Before Burrell, P.J., Rahmeyer and Lynch, J.J.*

AFFIRMED

     PER CURIAM. John Doe ("Plaintiff") filed a negligence action against Ozark Christian

College ("OCC") claiming that OCC negligently recommended a prospective employee

("Employee") to the employer church ("Employer"), as a direct result of which, two years after

he was hired, Employee injured Plaintiff.[1] The trial court entered summary judgment in favor of

---

[1] Plaintiff's second amended petition contained the following six counts against OCC: "Negligent Failure to Supervise Students/Ministers" (count 1), "Negligent Infliction of Emotional Distress" (count 2), "Negligence Per Se" (count 3), "Negligent Misrepresentation Regarding [Employee]" (count 4), "Negligence" (count 5), and "Intentional Misrepresentation Regarding [Employee]" (count 6). On appeal, Plaintiff abandons counts 1–4 and 6 by limiting his arguments in his points relied on, reply brief, and oral argument to his common-law negligence claim in count 5 of his petition.

1

OCC, concluding that Missouri has not defined or recognized a "duty to not make a negligent recommendation to a prospective employer." Because Plaintiff has failed to demonstrate the existence of such a duty, we affirm the trial court's judgment.

## Standard of Review

"Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no dispute, a right to judgment as a matter of law. Rule 74.04." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

The summary judgment movant has the burden to establish a right to judgment as a matter of law "flowing from facts about which there is no genuine dispute." *Id.* at 378. When the party moving for summary judgment is a defending party, as is the case here, the movant's right to summary judgment can be established by showing one of the following:

> (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381.

## Factual and Procedural Background

The facts set out in the parties' statements of uncontroverted material facts[2] establish that OCC is an independent college that prepares students for ministry and that Employee was a student there from 1982 to 1989. On occasion, individual churches that need to fill open positions, such as and including Employer, contact OCC for recommendations. However, the

---

[2] Rule 74.04(c)(2) provides that a response to a motion for summary judgment "may also set forth additional material facts *that remain in dispute*[.]" (Emphasis added). Instead, Plaintiff chose to set forth in his response a "statement of additional *uncontroverted* material facts." (Emphasis added). Plaintiff offers no explanation as to how such a statement complies with the Rule 74.04 mandated summary judgment process.

individual churches, and not OCC, make the ultimate hiring decisions. OCC and Employer are separate entities. In his second amended petition ("petition"), Plaintiff alleges that, based upon OCC's positive recommendation, Employer hired Employee in 2004. Plaintiff further alleged that, as a result of that employment, Employee sexually abused Plaintiff from 2006 through 2010.

OCC filed a motion for summary judgment. In that motion, OCC contended that assuming all factual allegations in Plaintiff's petition are true, Plaintiff's negligence claim nevertheless failed as a matter of law because, in giving an employment recommendation to Employer, OCC owed no duty to Plaintiff.[3] The trial court agreed with OCC and entered judgment in its favor, concluding that:

> The first question is what duty was owed by OCC to [Employer]? Is there a duty to not make a negligent recommendation to a prospective employer, whether it come[s] from another employer or an education institution? Plaintiff admits that [he] cannot find a Missouri case that holds such a duty exists. There are other states that have reached that conclusion, California, New Mexico and Texas, but the Missouri legislature has not defined such a cause of action and the Missouri Courts have not recognized one. This court declines to create such a cause of action now.

Plaintiff timely appeals the trial court's judgment.

## Discussion

### *No Existing Common Law Duty Identified by Plaintiff*

"In any action for negligence, a plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach proximately caused the plaintiff's injury." *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. banc 2018).

---

[3] OCC also contended that assuming those same facts and further assuming a duty did exist, Plaintiff's negligence claim still failed because Employee's criminal acts were the intervening and superseding cause of Plaintiff's injuries. We do not reach this issue.

"'Whether a duty exists is purely a question of law.'" *Hoffman v. Union Elec. Co.*, 176 S.W.3d 706, 708 (Mo. banc 2005) (quoting *Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151, 155 (Mo. banc 2000)). "A duty to exercise care can be imposed by a controlling statute or ordinance, assumed by contract, or imposed by common law under the circumstances of a given case." *Bowan ex rel. Bowan v. Express Med. Transporters, Inc.*, 135 S.W.3d 452, 457 (Mo.App. 2004) (citing *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976)). Plaintiff proffers no statutory, ordinal, or contractual basis bearing upon the facts here supporting the existence of a duty upon OCC toward Plaintiff in making its employment recommendation of Employee to Employer.

Rather, conceding that OCC had no duty to provide an employment recommendation in the first instance, Plaintiff claims that

> [c]onsistent with existing Missouri law and cases from other states, Missouri should *recognize* that once a defendant undertakes to provide a recommendation to a perspective [sic] employer, the defendant has a duty to provide a non-negligent recommendation if the defendant knows or has reason to know that a negligent recommendation involves an unreasonable risk of injury to the perspective [sic] employer or third-parties.

(Emphasis added). More precisely, Plaintiff claims that Missouri's common law has always imposed this duty upon anyone who makes an employment recommendation and that all that remains is for this court to simply "recognize" that existing duty.

In resolving this claim, we initially note that the Missouri Court of Appeals is an error-correcting court, whereas the Supreme Court of Missouri is a law-declaring court. *State v. Freeman*, 269 S.W.3d 422, 429 (Mo. banc 2008) (Wolff, J., concurring). Accordingly, if a trial court erroneously fails to apply an existing common-law duty, it is within the purview of our court to correct that error. The declaration of a new common-law duty, however, is not within

4

our purview but, rather, lies squarely within the law-declaring function of our supreme court. *See id.* at 429-30.

Plaintiff's argument implicitly concedes that no Missouri case has addressed or recognized a common-law duty of care upon a person or entity to either a prospective employer or a third party in making an employment recommendation. Rather, in the absence of such authority, Plaintiff offers four reasons as to why that common-law duty exists in Missouri's common law waiting only for recognition:

- OCC assumed the duty and "[s]uch duty is reflected in the language of section 324A of the Restatement (Second) of Torts."

- Section 311 of the Restatement (Second) of Torts imposes a duty and liability on OCC under the facts of this case for negligent misrepresentation involving risk of physical harm.

- Other states have recognized a duty in their common law to not provide a negligent recommendation.

- Public policy factors "support imposition of a duty on OCC not to provide an inaccurate and incomplete recommendation in this case."

None of these reasons support the existence of a duty, but rather contemplate the declaration of a new common-law duty. Such a declaration is not within our power.

*Section 324A of the Restatement (Second) of Torts ("section 324A")*

Plaintiff concedes that "[OCC] did not have any duty to provide [Employee's] name to [Employer] or to provide a recommendation regarding [Employee] when asked by [Employer]." Rather, Plaintiff asserts that OCC's gratuitous provision of an employment recommendation to Employer was an assumption of a duty to him to exercise reasonable care in doing so.

5

As Plaintiff asserts, "Missouri courts have recognized that a duty may be assumed or undertaken, and when so assumed, a defendant must exercise reasonable care in carrying out the duty. Such a duty is reflected in the language of [section 324A]." ***Bowman v. McDonald's Corp.***, 916 S.W.2d 270, 287 (Mo.App. 1995) (overruled on other grounds by ***Richardson v. QuikTrip Corp.***, 81 S.W.3d 54, 63 n.9 (Mo.App. 2002)) (internal citations omitted). "We look to . . . [section 324A] as the touchstone for whether a defendant has assumed a duty toward a third person." ***Berliner v. Milwaukee Elec. Tool Corp.***, 501 S.W.3d 59, 67 (Mo.App. 2016).

Section 324A provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

The threshold application issue of section 324A is whether the defendant is "[o]ne who undertakes . . . to render services to another." Thus, whether OCC assumed an obligation or intended to render services for the benefit of Employer is an elemental fact ("threshold elemental fact") that Plaintiff must plead and prove in order to cross the threshold for establishing OCC's section 324A duty of care to Plaintiff. *See **Smith v. Allendale Mut. Ins. Co.***, 303 N.W.2d 702, 710 (Mich. 1981) (absent evidence supporting a conclusion that the actor agreed or intended to provide services for the employer's benefit, the threshold element of duty which in a case based upon §324A flows from an undertaking to render services to another is lacking); ***Brown v.***

6

***Michigan Millers Mut. Ins. Co., Inc.***, 665 S.W.2d 630, 633 (Mo.App. 1983); ***Wurst v. Nat'l Oil***

***& Supply Co., Inc.***, 780 S.W.2d 97, 102 (Mo.App. 1989); ***Bowman***, 916 S.W.2d at 287.

Here, however, Plaintiff did not plead this threshold elemental fact in his petition, which

is fatal to his section 324A claim.[4]  *See, e.g.*, ***Wurst***, 780 S.W.2d at 102.  Indeed, the only

somewhat related factual allegation made by Plaintiff in his petition is that "[a]fter graduation,

[OCC's] placement program assisted and guided [Employee] in his employment at various

churches throughout the United States during years 1990-2004."  This allegation, if true,

supports the reasonable inference that OCC's recommendation to Employer was made to benefit

its self-interests or those of its former student.  It does not support an inference that OCC

assumed an obligation or intended to benefit Employer when it gave that recommendation.

*Section 311 of the Restatement (Second) of Torts ("section 311")*[5]

Plaintiff next asserts that OCC's duty in his negligence claim is imposed by section 311

and cites ***Davis v. Bd. of Cnty. Comm'rs of Doña Ana Cnty.***, 987 P.2d 1172, 1179 (N.M. App.

1999), in support of its application.[6]  Plaintiff fails, however, to cite any Missouri case that has

---

[4] Because Plaintiff's omission of the threshold elemental fact defeats his section 324A claim, we do not address whether the facts of this case satisfy any other section 324A elemental facts.

[5] Section 311 entitled "Negligent Misrepresentation Involving Risk of Physical Harm" provides:
>    (1) One who negligently gives false information to another is subject to liability for physical harm
>    caused by action taken by the other in reasonable reliance upon such information, where such
>    harm results
>>        (a) to the other, or
>>        (b) to such third persons as the actor should expect to be put in peril by the action taken.
>    (2) Such negligence may consist of failure to exercise reasonable care
>>        (a) in ascertaining the accuracy of the information, or
>>        (b) in the manner in which it is communicated.

Restatement (Second) of Torts § 311 (1965).

[6] Davis sued the county for negligent misrepresentation.  ***Davis***, 987 P.2d at 1176.  Nothing in ***Davis*** suggests that its acceptance of section 311 to impose a duty in a negligent misrepresentation action upon a previous employer in making employment references has any applicability to a negligence claim, as Plaintiff is asserting on appeal here. *See* footnote 1.  Moreover, while ***Davis*** recognized a negligent misrepresentation cause of action in this context on the basis of section 311 in New Mexico, the Kentucky Court of Appeals refused to recognize it in its state because "there is no support for this cause of action in the employee reference context in existing Kentucky case law.  As aforestated, we decline to expand our existing law on negligent misrepresentation to encompass references given by former employers where there has . . . not previously been a cause of action in this context." ***Johnson***, 326 S.W.3d at 817.

7

adopted and applied the section 311 duty regarding negligent misrepresentations to impose a duty upon a defendant in a negligence action. In the absence of that authority, Plaintiff has failed to identify that such a section 311 duty exists in Missouri common law for his negligence claim.

*Cases from Other States*

Plaintiff next purports to identify an existing duty in Missouri's common law for his negligence claim by asserting that other states have recognized in their common law "a duty to not provide a negligent recommendation." In addition to **Davis**, *supra*, Plaintiff cites us to **Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins**, 926 S.W.2d 287 (Tex. 1996), and **Randi W. v. Muroc Joint Unified Sch. Dist.**, 929 P.2d 582 (Cal. 1997), in support of what he generalizes as a "duty not to provide a negligent recommendation."[7]

Plaintiff has completely omitted, however, any citation to cases from other states rejecting the existence of such a duty. *See, e.g.*, **Passmore v. Multi-Mgmt. Servs., Inc.**, 810 N.E.2d 1022, 1028 (Ind. 2004) (adopting Section 310 of the Restatement (Second) of Torts for *conscious* misrepresentations in employment references, as adopted and applied in **Randi W.**, but declining to adopt section 311 for *negligent* misrepresentations in employment references); **Johnson v. United Parcel Serv., Inc.**, 326 S.W.3d 812, 817 (Ky. Ct. App. 2010) (finding that former employer's recommendation of employee to prospective employer was not an undertaking to render "services" (as the term is contemplated by the Restatement (Second) of Torts ) and declining to expand existing law on negligent misrepresentation to encompass references given by former employers); **Richland Sch. Dist. v. Mabton Sch. Dist.**, 45 P.3d 580, 587 (Wash. Ct. App. 2002) (declining to adopt section 311 as a basis for negligent

---

[7] As previously noted in footnote 6, Plaintiff conflates the duty in a negligence claim with the duty in a negligent misrepresentation claim, and he does so here in his cited cases without any explanation or citation to authority that they are equivalent duties.

misrepresentation because Washington had never adopted it and no published case had discussed its applicability to Washington common law and declining to follow *Davis* and *Randi W.*); *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 692 N.E.2d 812, 820 (Ill. App. Ct. 1998) (holding that Illinois has not recognized a cause of action for "negligent referral" and declining to follow *Golden Spread* and *Randi W.*); *Cohen v. Wales*, 518 N.Y.S.2d 633 (N.Y. App. Div. 1987) ("The mere recommendation of a person for potential employment is not a proper basis for asserting a claim of negligence where another party is responsible for the actual hiring[.]").

In light of these contrary cases from Indiana, Kentucky, Washington, Illinois, and New York, Plaintiff's mere citation to supporting cases from New Mexico, Texas, and California fails to analytically support or persuade us that such a duty, as Plaintiff suggests, exists in Missouri's common law.

*Public Policy Factors*

Plaintiff's remaining argument is that public policy factors "support a finding that [OCC] had a duty not to provide a negligent recommendation regarding [Employee]." Plaintiff relies upon *Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426 (Mo. banc 1985), for two propositions. First, "[i]t is generally stated that foreseeability that some injury might result from the act complained of normally serves as the paramount factor in determining the existence of a duty." *Id.* at 431. Second,

> [t]he judicial determination of the existence of a duty rests on sound public policy as derived from a calculus of factors: among them, the social consensus that the interest is worthy of protection; the foreseeability of harm and the degree of certainty that the protected person suffered injury; moral blame society attaches to the conduct; the prevention of future harm; consideration of cost and ability to spread the risk of loss; the economic burden upon the actor and the community— the others.

9

*Id.* at 432. We have no quarrel with either proposition, nor with our supreme court, in its "law-declaring" function, *see **Freeman***, 269 S.W.3d at 429, considering, analyzing, and weighing these public policy factors or any other policy factors it deems appropriate to declare the existence of a duty heretofore not found in Missouri's common law. Plaintiff has failed to direct us to any case, and our research has found none, where our supreme court has declared the existence of any duty arising from making an employment recommendation. In the absence of such a declaration, considering and weighing various public policy factors, standing alone, offers this "error-correcting court," *see **Freeman***, 269 S.W.3d at 429, no rationale upon which to find trial court error in granting summary judgment on the basis that such a duty does not currently exist in Missouri's common law.

*Conclusion as to Existence of a Duty*

As in the trial court, based upon the summary judgment record, Plaintiff has failed to demonstrate the existence of a duty owed by OCC to Plaintiff under Missouri's common law and, therefore, the trial court's entry of summary judgment in favor of OCC on that basis was not erroneous. Plaintiff's first point is denied.

**Causation Challenge is Moot**

Plaintiff's second and final point contends that the trial court erred in granting summary judgment "on the basis that [Employee]'s actions were an intervening and superseding cause of Plaintiff's injuries[.]" Having concluded that Plaintiff has failed to demonstrate that OCC owed him a duty of care in making the employment recommendation, a necessary element to sustain Plaintiff's negligence claim, we need not review whether summary judgment was also appropriate as to the causation element of such a claim. *See **State v. Kinkead***, 983 S.W.2d 518, 520 (Mo. banc 1998) ("Issues that are not essential to a disposition of the case should not be addressed.").

10

## **Decision**

The trial court's judgment is affirmed.



# Missouri Court of Appeals
## Southern District
### Division One

JOHN DOE, a minor, by and through    )
his Natural Mother, MOTHER DOE,    )
    )
       Plaintiff-Appellant,    )
    )
vs.    )    No. SD35573
    )
OZARK CHRISTIAN COLLEGE,    )    Filed April 5, 2019
    )
       Defendant-Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Dean G. Dankelson

CONCURRING OPINION

I concur in the principal opinion but write separately to express my analysis of the threshold application element of a section 324A claim.

While section 324A "has enjoyed widespread acceptance by courts[,]" Restatement (Third) of Torts:  Phys. & Emot. Harm § 43 Comment c. (2012), Plaintiff has failed to cite us to any case from any court in the nation that has addressed or considered, much less applied, section 324A to impose a duty of care to a third party upon a person or entity making an employment recommendation to a prospective employer.  Given the large quantity of employment recommendations made daily in every state in our country, this total nationwide silence about a section 324A duty in that context strongly suggests that Plaintiff is laboring under

1

a misapprehension as to its application to the facts here to impose a duty upon OCC. That

misapprehension is found at the threshold of section 324A.

Section 324A provides:

One who undertakes, gratuitously or for consideration, to render services to
another which he should recognize as necessary for the protection of a third
person or his things, is subject to liability to the third person for physical harm
resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon
the undertaking.

Restatement (Second) of Torts § 324A (1965).

The threshold application issue of section 324A is whether the defendant is "[o]ne who

undertakes . . . to render services to another." As observed in ***Brown v. Michigan Millers Mut.***

***Ins. Co.***, Inc., 665 S.W.2d 630, 633 (Mo.App. 1983), the first Missouri case to discuss and apply

section 324A, that section and its application were extensively discussed by the Michigan

Supreme Court in ***Smith v. Allendale Mut. Ins. Co.***, 303 N.W.2d 702 (Mich. 1981).

The question presented in ***Smith*** concerned "the liability of a fire insurer to employees of

its insured for injuries sustained as a result of fire hazards not detected and brought to the

insured's attention as a result of the insurer's inspections of the insured's premises. ***Id.*** at 705.

Although that question was not concerned with an employment recommendation, its resolution is

nevertheless instructive about the general applicability of section 324A.

In ***Smith***, the plaintiffs maintained "that by inspecting the [insured's property] for fire

hazards, the insurers . . . embarked upon gratuitous undertakings within the ambit of [section]

324A." ***Id.*** at 710. The court rejected this augment because

> [i]n our view, plaintiffs misconceive the sweep of the section's principles. The illustrations given in the official comments to [section] 324A and the cases cited by way of example in the Reporter's Notes involve either a contractual undertaking by a defendant to render particular services, an undertaking by an agent or employee to render services to his employer as part of the agency or employment, or *an undertaking whose unambiguous object is to benefit another and which would not have been performed primarily for the actor's purposes.*

*Id.* at 710–11 (emphasis added). The court added that "[i]t is not enough that the insurer acted. It must have undertaken to render services to another. Its acts do not constitute such an undertaking unless it agreed or intended to benefit the insured or its employees by the inspections." *Id.* at 711. Only where an insurer has engaged in conduct evidencing an agreement or intent to benefit others by the inspection

> has the insurer acknowledged the propriety of judging the competence of its inspection by a standard which measures its potential effect on others. This concept of acknowledged obligation to an other [sic] is comprehended by [section] 324A's threshold description of "(o)ne who undertakes * * * to render services to another"; the rule stated in [section] 324A by its terms does not apply to an actor following a self-serving course of conduct.

*Id.* Whether gratuitous or contractual, for an undertaking to give rise to liability under section 324A,

> the evidence must show that the actor assumed an obligation or intended to render services for the benefit of another. Evidence demonstrating merely that a benefit was conferred upon another is not sufficient to establish an undertaking which betokens duty. Persons pursuing their own interests often benefit others in the process. Accordingly, where a plaintiff seeks to prove an undertaking by conduct which benefits another and that conduct is consistent with a primary purpose on the part of the actor to benefit himself, the plaintiff must offer additional evidence to create a jury question whether there was an undertaking to render services and hence a duty to one who might foreseeably be injured by the actor's failure to perform the undertaking with reasonable care.

*Id.* at 712. *Smith* held, "[a]bsent evidence supporting a conclusion that the insurers agreed or intended to provide inspection services for the employers' benefit, the threshold element of duty which in a case based upon [section] 324A flows from an undertaking to render services to another is lacking." *Id.* at 710.

3

The ***Smith*** analysis has been applied in two Missouri cases where it was claimed that an insurer had breached its section 324A duty to a third-party plaintiff by its negligent inspection of the insured's property: ***Brown***, *supra*, and ***Wurst v. Nat'l Oil & Supply Co., Inc.***, 780 S.W.2d 97 (Mo.App. 1989). In ***Brown***, the Western District of our court affirmed the jury's verdict finding the insurer liable under section 324A because evidence consisting of insurer's advertisements and its letter to the insured offering insurance coverage was substantial evidence supporting the jury's factual determination that the insurer undertook its inspections for the benefit of the insured. ***Brown***, 665 S.W.2d at 634. On the other hand, our Eastern District colleagues, in affirming the trial court's judgment in insurer's favor notwithstanding the verdict, determined in ***Wurst*** that

> [u]nlike *Brown*, the record in this case is devoid of any such evidence demonstrating [insurer's] intent to benefit the [insured] through its loss control surveys. There was testimony in the present case that following its loss control surveys, [insurer] would customarily make recommendations for improvements to an insured. The loss control survey and recommendations undoubtedly benefited and assisted the [insured]; because in seeking to contain its own losses, [insurer] necessarily reduced the [insured's] losses as well. *See Smith*, 303 N.W.2d at 713.

***Wurst***, 780 S.W.2d at 102.

Rather than engage in a ***Smith*** analysis of the threshold applicability of section 324A here, however, Plaintiff has engaged in the same faulty analysis used by the plaintiff in ***Bowman***, *supra*. In that case, Bowman, a customer who was criminally assaulted at a restaurant, claimed that his petition set forth a cause of action under section 324A against McDonald's Corporation, the restaurant's franchisor, that his proposed Instruction F accurately presented that claim, and that the trial court erred in refusing to submit that instruction to the jury. ***Bowman***, 916 S.W.2d at 286. Instruction F read:

> Your verdict must be for plaintiff and against defendant McDonald's Corporation
> if you believe:

4

First, defendant McDonald's Corporation undertook to have and [sic] effective security program at all McDonald's Restaurants, including the property located at 8304 Hickman Mills Drive; and

Second, defendant McDonald's Corporation on August 23, 1991, failed to have an armed security guard during the nighttime hours of operation on the Restaurant's parking lot; and

Third, defendant McDonald's Corporation was thereby negligent; and

Fourth, as a direct result of such negligence, plaintiff sustained damage.

*Id.* 286-287. The ***Bowman*** court determined that the first element of this instruction did not accurately reflect the law based on section 324A, stating that "[p]roposed Instruction F does not require a finding that McDonald's assumed a duty to protect appellant; instead, it assumes that undertaking to have an effective security program at all McDonald's restaurants is equivalent to the assumption of such a duty, a position unsupported by Missouri case law." *Id.* at 287.

Here, Plaintiff similarly presumes that OCC's act of giving an employment recommendation is equivalent to OCC's assumption of a duty to protect Plaintiff. As identified in ***Smith*** and applied in Missouri in ***Brown***, ***Wurst***, and ***Bowman***, Plaintiff's presumption does not accurately reflect the law based on section 324A.


GARY W. LYNCH, J. – CONCURRING OPINION AUTHOR

5