# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3443
_____

Cheri Williams

*Plaintiff - Appellee*

v.

United States of America

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 25, 2024
Filed: December 2, 2025

_____

Before BENTON, ARNOLD, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

The district court awarded Cheri Williams almost $3 million after her 15-year-old son, Tony White, was killed in a crash with a United States Postal Service van while riding his bike in Kansas City, Missouri. Because the evidence at the two-day bench trial was insufficient to show that a reasonable driver could have avoided the collision, we vacate the judgment. *Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC*, 745 F.3d 877, 883 (8th Cir. 2014) (standard of review).

The United States is liable for "the negligent or wrongful act or omission" of a federal employee "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). To establish negligence under Missouri law, a plaintiff must show that the defendant owed a duty of care, the defendant breached that duty, and the breach proximately caused the plaintiff's injury. *Scott v. Dyno Nobel, Inc.*, 967 F.3d 741, 744 (8th Cir. 2020) (per curiam) (citing *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. banc 2018)).

Williams submitted her negligence claim on two theories: (1) the driver "failed to keep a careful lookout" or (2) the driver knew or could have known, using the highest degree of care, that there was a reasonable likelihood of collision in time to have taken some evasive action and that the driver failed to take such action. D. Ct. Order of Sept. 5, 2023, at 20; s*ee Hayes v. Price*, 313 S.W.3d 645, 649–650 (Mo. banc 2010) (considering negligence claim under MAI-CR 17.05 – Failure to Keep a Lookout); *Hollis v. Blevins*, 927 S.W.2d 558, 564 (Mo. Ct. App. 1996) (considering negligence claim under MAI-CR 17.04 – Failure to Act After Danger of Collision Apparent). For either, Williams had to prove that the driver knew or could have known about the impending collision and that she could have avoided it. *Hayes*, 313 S.W.3d at 650; *Hollis*, 927 S.W.2d at 564. She had to show that there was "sufficient time and distance" to avoid the collision, "considering the movement and speed of the vehicles." *Hayes*, 313 S.W.3d at 650 (quoting *Thurman v. Anderson*, 693 S.W.2d 806, 807 (Mo. banc 1985)); *see Hollis*, 927 S.W.2d at 564.

Shaniel Barnes, the van driver, died before trial, and there were no other eyewitnesses. A security camera nearby recorded the accident, and the video was introduced into evidence. It shows the USPS van driving east on East 20th Street, heading toward the camera. White, riding his bicycle, appears in view from the south, where the street intersects an alley. He rides into the street, makes a sharp right turn as he falls to the ground, and is struck by the van before being run over by

-2-

the front passenger wheel. Barnes does not slow or swerve and drags White almost 40 feet. She continues to drive after his body dislodges.

The district court found that Barnes "had the ability to take evasive action and failed to do so." The video shows otherwise. White appears, enters the street, and is hit in less than one second. A Government crash expert testified that White crossed the sidewalk 0.666 seconds before the collision and Williams's expert agreed that he entered the street "less than a second" before impact. This, combined with the undisputed expert testimony that a driver requires 1.5 seconds to perceive and react to a hazard, means that Barnes did not have time to react, let alone avoid the collision.

Williams argues that the video is not conclusive because it does not show if White entered the street from the alley or from the sidewalk. Admittedly, the video does not answer that question.[1] But even assuming White was riding parallel to the street on the sidewalk, our analysis does not change. Barnes's duty to avoid White triggered when she "should have realized that [White] was likely to proceed into [her] path." *McAlister v. Urhahn*, 492 S.W.2d 19, 21 (Mo. Ct. App. 1973). In other words, Barnes had to take evasive action when an accident became reasonably likely. *See Wallander v. Hicks*, 526 S.W.2d 848, 852–53 (Mo. Ct. App. 1975); *Hollis*, 927 S.W.2d at 565. It is undisputed that happened when White swerved into the street, not before.[2] *See Bushong v. Marathon Elec. Mfg. Corp.*, 719 S.W.2d 828, 831 (Mo. Ct. App. 1986) (duty to act arises when "person, in the exercise of the highest degree of care, knew or should have *known that there was a danger, that is, a likelihood of injury*" (citation omitted)). And once White entered the street, no reasonable driver

---

[1]Other evidence at trial did. All three Government experts testified that White entered the street from the alley. Williams's expert only said that he "might" have been riding on the sidewalk.

[2] Williams's expert testified that there was no hazard while White was riding on the sidewalk, but only when a reasonable driver would perceive the bicycle to be "coming out in front of [the van]."

could have avoided the collision or lessened its impact in the less-than-one second she'd have to react.

The district court was rightly critical of Barnes's conduct and post-accident statements. Barnes said she wasn't on the phone during the accident, but she was. She did not stop right after she hit White; she drove around 200 more feet while continuing her phone call. Then she called her supervisor and vaguely referred to a bicycle under her van, but denied hitting anyone, making up a story about swerving to avoid a pair of shoes in the street. And Barnes never called 911, another motorist did. While we agree with the district court that Barnes lied to law enforcement, that she hit White while on her phone, and that she did not try to avoid the collision, none of that changes the conclusion that no reasonable driver could have avoided hitting White.[3]

Finally, while the district court thought Barnes was lying about almost everything, it credited her self-serving claim that she was only driving 10 miles-per-hour. Even if true (and there's evidence that was a lie, too), the accident remained unavoidable because White entered the street less than 27 feet from the van, which was the stopping distance at 10 miles-per-hour.

Because Williams did not carry her burden to prove Barnes could have avoided the collision or mitigated the damage, the Government was entitled to judgment as a matter of law. The judgment of the district court is vacated, and the case is remanded for proceedings consistent with this opinion.

_____

[3]Williams now argues that the impact alone did not kill White, but instead Barnes's post-impact conduct contributed to his death. But she neither made this argument to the district court nor submitted evidence to support this theory.